No. 19-30063

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

United States of America
*Plaintiff-Appellee*

*v.*

Johny Emmanuel Moreno
*Defendant-Appellant*

---

On Appeal from the United States District Court
for the District of Idaho
No. 18-CR-00097-S-BLW
Hon. B. Lynn Winmill, presiding

---

**APPELLANT'S EXCERPTS OF RECORD**
**Volume 1**

---

Robyn Fyffe, ISB #7063
FYFFE LAW, LLC
800 W Main St, Ste 1460
Boise, Idaho 83702
Telephone: (208) 338-5231
Facsimile: (208) 917-4596
robyn@fyffelaw.com

Attorney for the Defendant-Appellant

TABLE OF CONTENTS

Excerpt of Sentencing Hearing Transcript, Held on March 20, 2019, before B. Lynn Winmill (CR-18–0097–S-BLW pp. 22-25) ........................................................................1

**UNITED STATES DISTRICT COURT**

**DISTRICT OF IDAHO**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:18-cr-00097-BLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHNY E. MORENO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**TRANSCRIPT OF PROCEEDINGS**
**BEFORE THE HONORABLE B. LYNN WINMILL**
**WEDNESDAY, MARCH 20, 2019; 1:41 P.M.**
**BOISE, IDAHO**

**FOR THE UNITED STATES OF AMERICA**
Christopher Booker
US ATTORNEY'S OFFICE
Washington Group Plaza IV
800 Park Blvd., Ste. 600
Boise, ID 83712-9903

**FOR DEFENDANT**
Courtney M. Peterson
PETERSON LAWYERS
671 E. Riverpark Lane, Ste. 210
Boise, ID 83706

Proceedings recorded by mechanical stenography, transcript produced by computer.

---

**TAMARA I. HOHENLEITNER, CSR 619, CRR**
FEDERAL OFFICIAL COURT REPORTER
550 WEST FORT STREET, BOISE, IDAHO 83724

# I N D E X

MARCH 20, 2019


| Proceedings | Page |
|---|---|
| Recommendations by the Government................ | 5 |
| Recommendations by the Defense.................. | 13 |
| Statement by the Defendant...................... | 19 |
| **Court's comments and Sentencing....** | 22 |

completely. But, in any event, it's clear, though, that he came as a child, not as an adult, to the United States?

THE PROBATION OFFICER: That is correct, Your Honor.

THE COURT: All right. Thank you.

All right. Well, let me begin. I have to address a number of items here before I actually get around to sentencing, Mr. Moreno. Let me first take up the issue of the objections.

First, the objection to possession of a firearm. The argument on behalf of the defense is that the two-level enhancement should not apply because there is no direct evidence that he had any firearms actually on his possession.

The evidence of firearm possession was the reference during a telephone call which he made or at least suggested that he had just dropped a gun. It's argued here that that was just posturing on his part, perhaps trying to impress the other person on the phone. But, you know, I'm not sure that's -- I guess I'm not very persuaded by that argument.

But far more important is the fact that essentially all of the individuals to whom he was distributing these large quantities of methamphetamine did have numerous guns in their possession and in close proximity to the drugs that were -- and money that was seized at the time of their arrest.

So, to me, it was clearly -- it was not only reasonably foreseeable; it was almost a certainty that an individual who is receiving these large, multi-pound quantities of methamphetamine

would be possessing firearms. That is such a clear connection that we see time and time and time again, and that I would have been shocked if anyone was possessing that large quantity of drugs and/or money involved in drug trafficking who didn't protect both through the possession of firearms.

And so I think it is absolutely foreseeable that Mr. Moreno's co-conspirators would have possessed firearms; so, therefore, I'm going to overrule that objection.

The question of the importation of a controlled substance and the two-level enhancement under 2D1.1(b)(16), I still have a concern that I articulated earlier that, given our more recent history -- you know, I have been around long enough to remember when all the methamphetamine was homegrown, 10 percent purity, cooked in somebody's backyard or in their garage or a mobile home somewhere.

Today that's just not the case. We see virtually pure methamphetamine, and it's all coming from labs presumably in Mexico or elsewhere, but it's coming across the southern border.

However -- so the question is: What sets this case apart? And I think what does set this case apart is what I alluded to in my discussion with Mr. Booker, that we have telephone communications, recorded telephone conversations from the defendant with Culiche or Mr. -- well, I'll just refer to him by his nickname, Culiche, who, as I understand it, was still in Sinaloa, Mexico, discussing drugs and picking up drugs, and

drugs were being sold. It is quite clear that there is direct communications between the source of the drugs in Mexico and the defendant.

In addition, we have the defendant orchestrating the wiring of money and funds back to the source so that it's essentially a direct involvement in the importation of the methamphetamine. So I'll overrule that objection as well.

With regard to the role in the offense, there really is no question that there were more than five participants. In my view, there is really no question but that Mr. Moreno was an organizer or leader or, rather, was a -- yeah, was an organizer or leader of the conspiracy.

The suggestion that he was subject to a threat that if he didn't start selling more drugs, that his family would be hurt and that this became then the motivation for his recruiting four family members to assist him in delivering more drugs in Idaho and Nevada, you know, I'm not sure that's a very plausible to start with. And certainly there is no direct evidence of that other than what's being argued here today.

Moreover, I'm not sure it makes much of a difference. If you get involved in drug trafficking, you're always at risk of threats from those from whom you are buying drugs. And I don't think that justifies in any way the involvement of other family members in making drug deliveries.

And indeed, from my review of the presentence report, it

appeared to me that his involvement with these other individuals was because he was afraid not necessarily of being harmed by those who were supplying drugs to him, but of being apprehended because he felt that he was being tracked or at least the narcotics officers in Idaho were on to him. So he was essentially taking a back seat and letting someone else do kind of the dirty work, go back and making the deliveries and putting them at risk rather than himself at risk.

So the bottom line is I think I really have no choice but to overrule that objection. I think Ms. Martinez got it exactly right with regard to all three. And for that reason, I will adopt the presentence report as my own findings in this matter and overrule any objections to the presentence report.

I may have neglected to ask -- if I did, Mr. Booker, would you move for the third level for acceptance of responsibility?

MR. BOOKER: Yes, Your Honor.

THE COURT: I'll grant that motion, but it's already taken into account.

I'll also grant the government's motion for a three-level downward departure based upon the defendant providing substantial assistance in their investigation of criminal activities.

That reduces the offense level I think to a 40; and with a criminal history category of 1, this yields a guideline range of 292 to 365 months.

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

FYFFE LAW

/s/ Robyn Fyffe

ROBYN FYFFE